Dunkín, Ch.
By a codicil to Richard Dawson's will, he *477 devised to Richard P. Dawson, two tracts of land, situate in Beaufort district, and he also bequeathed to him as follows : “six negroes, to be designated by my executors, of a fair average value with my other negroes, (including in this number, two now in his possession, named Adeline and Maria,) to him and his heirs forever.”
The testator devised to his son Thomas Dawson, several tracts of land, which he described ; “also, the following negro slaves, Barnes, Charlotte, (&c. naming thirty-seven negroes,) to have and to hold the said property, real and personal, unto him the said Thomas Dawson and his heirs, forever.”
At the sitting of the court for Beaufort district,, the following order was proposed to be entered on the part of Messrs. E. & A. Rhett, solicitors for Richard P. Dawson :
“Ordered, that a writ of partition do issue, directed to five commissioners, two to be named by the complainant, two by the applicant, Richard P. Dawson, and one by the commissioner, and in the event of their not agreeing, all to be named by the commissioner, authorizing and requiring them to allot and set apart to Richard P. Dawson, of the negroes of the testator, Richard Dawson, the elder, six ne-groes, of an average value with those that pass under the will and codicil of the said testator; and that it be referred to the commissioner to ascertain and report the value of the services of such negroes as may be set apart, from the first day of January, 1837.”
The consideration of the order was postponed, and it was taken up at Columbia, by consent, at Chambers, on the 26th May, 1843.
It was stated, both at the sitting of court, and at Columbia, that the slaves, Adeline and Maria, mentioned in the bequest to Richard P. Dawson, had been held to pass to other persons, under a deed previously executed by the testator, and had been delivered up. It was also stated at Columbia, that several of the negroes bequeathed to Thos. Dawson, had been delivered up by him, under the same circumstances.
The grounds assumed in opposition to the motion, and the only grounds then taken, were, that the legacies to Richard P. Dawson and Thomas Dawson, were both s.pe- *478 cific, and were, therefore, partially adeemed, or that they were both demonstrative, and the deficiency must be made up to both, from the after acquired property of the testator. It was furthermore insisted that the after acquired property was insufficient for this purpose, and that the legacies must abate in proportion. The cause was argued by the counsel, but it was agreed that a statement of the after acquired property should be submitted to the Chancellor before the decision was made. This was accordingly furnished by the counsel shortly afterwards.
The Chancellor granted the order submitted on the part of Richard P. Dawson, and this is an appeal from that decision.
It may be well first to consider the character of the bequest to Richard P. Dawson. The distinction between specific and demonstrative legacies, is sometimes very nice, although the difference in the consequences is well established. Where a debt, or specific chattel, is bequeathed, the specific legacy is extinguished in the life-time of the testator by the extinguishment of the thing itself, as by payment of the debt, or by the sale, or conversion, or destruction, of the chattel. The legatee can have only the thing bequeathed, and nothing else; if that cannot be found the legacy is gone, or must remain unsatisfied. Such is plainly the bequest to Thomas Dawson. But this consequence does not apply to a pecuniary or demonstrative legacy, which is general in its nature, though a particular fund, or means, be pointed out by the will to satisfy it. The distinction is illustrated, and the cases reviewed, in Walton vs. Walton, 7 J. C. R. 258. Chancellor Kent refers to the civil law for an example of the sound principle on which the distinction is founded. The testator gave to Pampheld, 400 aurei or pieces of gold, and referred to a debt which Julian, his agent, owed him, and to his property in the army, and to his cash. He died without altering his will, but after he had converted all that property to other uses. The answer of the civilian was, that the testator intended only to point out to his heirs the funds from which the legacy could most easily be drawn, without intending to annex a condition to a pure gift, and that the legacy was, consequently, to be paid. In Paulet’s case, *479 Lord Raym. 335, testator gave his niece 500 pounds, which Lady C. owed him, by bond ; the legacy was held not to be specific, hut demonstrative. So, in Gillaume vs. Adderly, 15 Ves. 384, a legacy of “£5000 sterling, or 50,000 current rupees,” afterwards described “as now vested in the East India Company’s bonds,” was held, by Lord Eldon, to be not specific, but general, as a demonstrative legacy, “being no more,” (in his own language,) “than a bequest of a sum of money, pointing out a particular mode of payment, by a fund provided in the first instance.” In all these cases the receipt of the debt by the testator, was held to be no ademption, because the legacy was considered pecuniary, and not specific, notwithstanding a reference was made to a particular part of the estate, as the part out of which the testator thought it most convenient they should be paid. “The courts,” says Chancellor Kent, “are so desirous of construing the bequest to be general, (or demonstrative,) that if there be the least opening to imagine the testator meant to give a sum of money, and referred to a particular fund only, as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security.”
The legacy here, is of “six negroes, to be designated by my executors, of a fair average value with my other ne-groes.” If the bequest had ended here, no doubt could exist, that if six negroes could be found belonging to the testator’s estate, of a fair average value with his other ne-groes, the legacy must be satisfied. The plain object was to give to Richard P. Dawson, six negroes, of a particular value. The testator adds, however, in a parenthesis, “including in this number, two now in his possession, named Adeline and Maria.” But one of these negroes certainly, to wit, Adeline, was (as is set forth in the third ground of appeal,) taken from Richard P. Dawson, under a deed executed by the testator in June, 1821, and which the court held not to be revocable by his subsequent wall. The inquiry, then, is presented, whether it was the object of the testator to give to Richard P. Dawson, six negroes of a fair average value with his other negroes, referring only to Adeline and Maria as a particular portion of his estate, out of which it would be most convenient, in part, to satis *480 fy the legacy. If so, the legacy must be satisfied, although the testator may have erred in supposing that those ne-groes could be appropriated for that purpose. If the testator had bequeathed to Richard P. Dawson, one thousand dollars, (including in that sum the note of one hundred dollars which he owed the testator,) it would be quite clear, from analogy to the cases cited, that the subsequent receipt of the payment of the note by the testator, would not adeem the legacy. But if it had appeared that the note was already paid at the date of the will, or that the note had been passed by the testator to a third person, and did not, in fact, belong to the testator, it would seem hardly open for argument that the legacy must be satisfied in full. So if the language of the bequest had been, “I give to my grand-son, Richard P. Dawson, $10,000, of my 6 per cent. State stock, (including therein, or taking to make up the amount, the $3000, of the Fire loan, 6 per cents., which I recently purchased,”) and it appeared that he had previously given the Fire loan stock to the brothers of the legatee, there could be no doubt, on the decided cases, that the legacy was demonstrative; that he only referred to the Fire loan stock, as a convenient mode of contributing to the satisfaction of the legacy, and that if this could not be so appropriated, the legacy would be made up from the testator’s other 6 per cent. State stocks, That is this case. The testator bequeaths to the legatee, “six negroes, of a fair average value, to be designated by his executors.” As a convenient and proper mode of making up the number, or, in part, satisfying the bequest, he indicates two, which were already in possession of the legatee; but these two, or one, at least, of them, prove to be no part of his estate. This mode of satisfying the legacy then fails, or proves unavailable. But it appears, from the statement submitted, that the legacy may, nevertheless, be satisfied; that “six negroes of a fair average value,” may be allotted to the legatee, from the residue of the estate ; and the court is of opinion, that there was no error in ruling that the legacy should be satisfied in full, although the mode indicated of satisfying it in part, proved unavailable. But it has been said here, that it was a misapprehension to suppose that Maria, as well as Adeline, had been taken from the *481 legatee. The argument at the circuit, certainly proceeded on this assumption. But it may have been an error, and an enquiry on this point will be directed. In the mean time, the order must be so far modified, as to direct an allotment to the legatee of five negroes in the mode therein specified, and enlarging the order of reference already made by instructing the commissioner to examine, and report, all the facts in relation to the slave Maria, reserving any final order, in that respect, until the hearing of the report; and it is so ordered and decreed.
Harper and Johnson, Chancellors, concurred.
Johnston, Ch., absent from indisposition.